# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

SUSAN KRAUSE,                                        Case No. 24-cv-4339 (LMP/ECW)

                        Plaintiff,

v.                                                   **ORDER DENYING DEFENDANT'S
                                                       MOTION TO TRANSFER**

INTEGRA LIFESCIENCES
CORPORATION,

                        Defendant.

Jonathan D. Miller, Debra L. Weiss, and Anthony W. Joyce, **Meagher & Geer, P.L.L.P., Minneapolis, MN,** for Plaintiff.

C.J. Schoenwetter, **Bowman & Brooke LLP, Minneapolis, MN**; John Thomas McDonald, **Reed Smith LLP, Princeton, NJ**; and Joseph J. Mammone, Jr., **Reed Smith LLP, Dallas, TX**, for Defendant.

Plaintiff Susan Krause ("Krause") alleges that her former employer, Defendant Integra LifeSciences Corporation ("Integra"), discriminated against her because she engaged in whistleblower activity and because of her sex, retaliated against her because she opposed the alleged discrimination, created a hostile work environment, intentionally inflicted emotional distress on her, and defamed her. ECF No. 8 ¶¶ 81–132. All of Krause's claims arise under Minnesota law. *See generally id.* Integra, a New Jersey company, moves to transfer venue to the U.S. District Court for the District of New Jersey. ECF No. 37. Because Integra does not meet its burden to show that transfer is appropriate, the Court denies the motion.

## BACKGROUND

Krause worked for Integra from 2021 to 2024 as its Corporate Vice President and Chief Quality Officer ("CQO").  ECF No. 8 ¶ 7.  Integra is a "global medical technology company" whose principal place of business is in New Jersey, *id.* ¶¶ 2, 8, and which has 16 offices worldwide, yet none in Minnesota, ECF No. 49 ¶ 6.  In her role as CQO, Krause oversaw product manufacturing at "over a dozen sites."  ECF No. 8 ¶ 11.

Integra offered Krause employment on May 18, 2021.  ECF No. 40-1 at 3–4.  On that day, Integra's Chief Human Resources Officer emailed Krause and extended an offer of employment, stating:

> Susan,
>
> Attached please find the offer letter we discussed and the referenced confidentiality agreement.  We are thrilled that you will be joining us and look forward to working with you and your many contributions.  Please review the offer letter, and contact me any time with questions you have.
>
> Congratulations and we look forward to your response to the offer.

*Id.*

The email, as noted, attached both an offer letter and document titled "Confidentiality and Invention Disclosure and Non-Compete Agreement" (hereinafter the "Confidentiality Agreement").  *Id.*  The offer letter, in part, contained the following provision:

> This offer is contingent upon satisfactory completion of Integra's pre-employment screening process, including a background check and references.  This offer is also contingent upon your signing the *attached agreement.  All employees are required to sign this document.  Please review, sign and date the attached agreement* and return it along with a

2

> copy of your signed offer letter. The original agreement should be sent
> to the Human Resources Department along with the other
> administrative forms in the new hire kit provided to you. If you have
> questions regarding the agreement, please contact the Human
> Resources Department. *If you do not agree with the terms of this
> document, this offer of employment, including all of its terms, will be
> rescinded.*

ECF No. 53-1 at 11 (emphasis added). The Confidentiality Agreement, in turn, contained

a non-compete agreement as well as an agreement that Krause would not disclose company

secrets. *See generally id.* at 3–9. The Confidentiality Agreement concluded with the

following provision:

> I agree that the validity, enforceability, construction and interpretation
> of this Agreement shall be governed by the laws of the State of New
> Jersey, without regard to its conflict of law rules. I also agree and
> consent that any and all litigation between Integra and me relating to
> this Agreement will take place exclusively in the State of New Jersey,
> and I consent to the jurisdiction and venue of the federal and/or state
> courts in the State of New Jersey.

*Id.* at 8.

On May 21, Krause requested three alterations to the offer letter but did not

otherwise mention the Confidentiality Agreement. ECF No. 40-1 at 3. On May 22, Integra

agreed to two of the three alterations and attached a revised offer letter. *Id.* at 2. The

revised offer letter contained identical language as the original conditioning Krause's

employment on her "signing the attached agreement." ECF No. 53-3 at 3. The May 22

email, however, did not attach (or reattach as it may be) the Confidentiality Agreement.

ECF No. 40-1 at 2. On May 22, Krause signed the revised offer letter and emailed it back

to Integra. ECF No. 49-1 at 1; ECF No. 53-3 at 4.

Integra hired Krause as a full-time remote employee, working primarily from Minnesota, but she traveled frequently. ECF No. 49 at 1. In her role as CQO, Krause was responsible for Integra's 600-person quality department, which oversaw more than 25,000 products manufactured at sites across the country. ECF No. 8 ¶ 11. Upon employment, Krause was immediately tasked with assisting Integra's facility in Boston, Massachusetts, to come into compliance with FDA regulations. *Id.* ¶ 15. But Krause alleges that Integra's executives stymied her attempts to report or to resolve quality control issues at the Boston facility and at other locations throughout her three years of employment. *Id.* ¶¶ 12–13.

Specifically, she alleges that CEO Jan De Witte ("De Witte") and Chief Legal Officer Eric Schwartz ("Schwartz") "threatened, yelled at, used profanity toward, and verbally abused" her in retaliation for her years-long efforts to report quality issues at Integra's production locations in Massachusetts, Pennsylvania, and New Jersey. *Id.* ¶¶ 12–22, 63–72. She also alleges that De Witte and Schwartz "repeatedly rebuffed" her attempts to bring such information to Integra's Board of Directors, *id.* ¶ 36, and generally encouraged her to circumvent FDA regulation, *id.* ¶ 39. Because of the hostile work environment created by the executives, Krause resigned on March 11, 2024. *Id.* ¶ 72. Krause alleges that De Witte thereafter defamed her during an earnings call by implying that he fired Krause to solve the company's quality control issues. *Id.* ¶ 73.

Krause filed her complaint in Minnesota state court on November 8, 2024, and Integra thereafter removed it to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on diversity jurisdiction. ECF No. 1. Now, Integra moves to transfer venue to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). ECF No. 37. Integra argues that

4

although Krause resides in Minnesota and worked remotely for Integra from Minnesota, the case would be more conveniently litigated in New Jersey, where Integra is headquartered. ECF No. 38 at 1–2. Integra further argues that Krause's employment agreement contains a valid and enforceable forum-selection clause which requires the Court to transfer the case to New Jersey. *Id.* at 10. Krause argues that Integra fails to meet its burden to show that the case should be transferred under Section 1404(a) and that the forum-selection clause is inapplicable to her claims. ECF No. 48 at 2–3.

## ANALYSIS

Krause originally filed this action in Minnesota state court, but Integra removed it to this Court pursuant to 28 U.S.C. § 1441(b), based on the diversity of citizenship between the parties. ECF No. 1, *see also* 28 U.S.C. § 1332(a). But even if diversity exists, a federal court must also be an appropriate venue. Venue is appropriate in either "a judicial district in which any defendant resides" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)–(2). If venue is not appropriate under § 1391(b), a defendant can move to transfer venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).

Here, Integra does not dispute that Minnesota is an appropriate venue. Instead, Integra argues that it is an inconvenient one and seeks to transfer the case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). That section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) "was drafted in accordance with the doctrine of *forum non conveniens*,

permitting transfer to a more convenient forum, even though the venue is proper," because Congress was concerned with "the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one." *Van Dusen v. Barrack*, 376 U.S. 612, 634 & n.30 (1964) (citation omitted).

"[F]ederal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). In deciding which venue is more convenient, courts employ a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* at 691. The Court is not limited to the pleadings and may also consider "undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents." *Dial Tech., LLC v. Bright House Networks, LLC*, No. 13-cv-2995 (MJD/TNL), 2014 WL 4163124, at *8 (D. Minn. Aug. 21, 2014).

## I. The Forum-Selection Clause

The traditional Section 1404(a) "calculus changes . . . when the parties' contract contains a valid forum-selection clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). In that event, a "district court should ordinarily transfer the case to the forum specified in that clause," and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62; *see also In re Union Elec. Co.*, 787 F.3d 903, 909 (8th Cir. 2015) ("*Atlantic Marine* stated that, when applying § 1404(a) in the presence of a forum-selection clause, questions of convenience to the parties and private interests fall away as having

6

been conclusively determined by the contractual selection of forum."). Indeed, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59–60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Yet "*Atlantic Marine* presupposes the existence of an action that falls within the scope of a valid forum-selection clause." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018). Therefore, when a party shows that "the clause is invalid (i.e., an enforceability challenge) or . . . does not cover the action or claims that the defendant is seeking to transfer (i.e., a scope challenge) . . . the traditional § 1404(a) framework applies." *Id.* Krause argues both that the forum-selection clause is not enforceable and that her claims fall outside the clause's scope. ECF No. 48 at 19–28.

Here, the parties' dispute raises another question: what law must the Court apply to determine whether a valid and applicable forum-selection clause exists? *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) ("Before we can determine the scope of the forum selection clauses . . . we must establish what body of law should govern our interpretation."). Because the determination rests on the validity and enforceability of a contract, it would appear natural to apply state law. *Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Off.*, 5 F.4th 895, 897 n.2 (8th Cir. 2021) (citations omitted) (noting that "[n]ormally, state law applies to interpretations of contracts in diversity actions"). But courts are surprisingly split; some apply state law, some apply "federal common law," and some utilize a combination of the two. *Id.*; *see, e.g.*, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016) ("The courts have interpreted [forum-selection clauses]

7

according to general common-law contract principles without addressing the precise source of that law."); *Hous. & Redevelopment Ins. Exch. v. Guy Carpenter & Co.*, No. 3:23-cv-996, 2024 WL 1258669, at *5 (M.D. Pa. Mar. 25, 2024) (applying state law but "rely[ing] as well on federal case law applying general principles of contract law to interpret forum-selection clauses").

The Eighth Circuit has not explicitly decided the issue. *Smart Commc'ns Collier*, 5 F.4th at 897 n.2. But this Court believes the better approach is that adopted by most circuits: state law applies to the validity and scope of a forum-selection clause. *E.g.*, *Collins*, 874 F.3d at 183 (summarizing the positions and holding that "[w]e find no reason . . . to apply federal common law to interpret the forum selection clauses"); *Martinez v. Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014) (holding that applying state law to applicability of forum-selection clauses "accords with the traditional divide between procedural and substantive rules").

"Having established that state contract law, rather than federal common law, governs the interpretation of the forum selection clauses here, [the Court] must now determine which state's contract law applies." *Collins*, 874 F.3d at 183. The parties present no argument on this issue; indeed, they rely only on federal cases. *See generally* ECF No. 38 at 10–16; ECF No. 48 at 18–28; ECF No. 51 at 2–9. This would indicate that neither believes "any distinctive feature of the relevant substantive law decides the dispute."[1]

---

[1]    Integra, in its reply brief, argues that "[r]egardless of whether the . . . forum-selection clause is analyzed under New Jersey or Minnesota law, the clause is valid." ECF No. 51 at 3.

*Weber*, 811 F.3d at 771; *see also Martinez*, 740 F.3d at 223 (quoting *Phillips v. Audio Active Ltd*., 494 F.3d 378, 386 (2d Cir. 2007)) (alterations in original) ("Nothing prevents the parties in litigation from choosing not to 'rely on any distinctive features of [the selected law] and [instead to] apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause.'").  Notably, however, the cited federal cases themselves rely on Minnesota law.  *See generally Medtronic Sofamor Danek, Inc. v. Gannon*, No. 17-cv-943 (SRN/FLN), 2017 WL 4685041, at *3 (D. Minn. Oct. 16, 2017); *Friend v. Haleon US Holdings, Inc*., No. 24-cv-648 (DSD/ECW), 2024 WL 2014214, at *2 (D. Minn. May 7, 2024); *Hall v. St. Jude Med. S.C., Inc*., 326 F. Supp. 3d 770, 777 (D. Minn. 2018); *Zhang v. UnitedHealth Grp*., 367 F. Supp. 3d 910, 916 (D. Minn. 2019). Therefore, the Court will largely apply Minnesota contract law but will "rely as well on federal case law applying general principles of contract law to interpret" the forum-selection clause. *Hous. & Redevelopment Ins. Exch.*, 2024 WL 1258669, at *5; *Weber*, 811 F.3d at 771 ("[P]arties' failure to brief choice-of-law analysis or arguments about distinctive features of foreign law seems to have driven many courts to default to general contract principles.").

After having established these principles, the Court turns to the questions presented. First, Krause asserts that the forum-selection clause is not enforceable because she never agreed to be bound by it.  ECF No. 48 at 19–21.  Second, she argues that the clause's scope does not cover her tort-based claims because it only applies to claims arising from her contractual employment agreement.  *Id.* at 21–28.  Therefore, the Court understands Krause

to make both an "enforceability challenge" and a "scope challenge." *Reading Health Sys.*, 900 F.3d at 97.

### A.    Enforceability of the Forum-Selection Clause

Integra offered Krause employment on May 18, 2021, through an email which attached both an offer letter and the Confidentiality Agreement. *See supra* at 2–4; ECF No. 40-1 at 3–4. The offer letter conditioned her employment on acceptance of the Confidentiality Agreement and stated that the offer would be rescinded if she did not agree with the offer letter's terms. ECF No. 53-1 at 11. Krause proposed minor alterations to the offer, and Integra responded by attaching a revised offer letter, which contained the same language regarding her employment being conditioned on "signing the attached agreement." but the email itself did not include a second copy of the Confidentiality Agreement. ECF No. 53-3 at 3; ECF No. 40-1 at 2. Krause signed and returned the revised offer letter, but nothing in the record suggests that Krause signed the Confidentiality Agreement.[2] ECF No. 53-3 at 2–4. Yet it is the Confidentiality Agreement, not the offer letter, which contained the forum-selection clause. ECF No. ECF No. 53-1 at 8.

The facts regarding this back-and-forth are undisputed, but the parties disagree about their legal significance. Integra maintains that because Krause agreed to and signed the revised offer letter—which made employment conditional on her acceptance of the Confidentiality Agreement—she agreed to be bound by the Confidentiality Agreement.

---

[2]    Krause contends she did not sign the Confidentiality Agreement. ECF No. 31 ¶ 3. Integra disputes that, ECF No. 38 at 11, but acknowledges that it has been unable to locate a signed copy, ECF No. 36 ¶ 14. Regardless, the fact remains that no signed copy has been produced as evidence in this case.

ECF No. 38 at 11. Krause maintains that because she did not sign the Confidentiality Agreement, and because it was not included in the same email as her final revised offer letter, it did not become a part of her employment agreement. ECF No. 48 at 21.

To the extent that Krause argues that the lack of her signature on the Confidentiality Agreement is legally dispositive, Krause is mistaken. It is not her signature on the Confidentiality Agreement that bound her to it, but her signature and acceptance of the offer letter. In Minnesota "[t]he formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (citation omitted). Here, the revised offer letter constituted a definite offer. And the revised offer letter explicitly conditioned Krause's employment on her agreement with the provisions of the Confidentiality Agreement. ECF No. 53-3 at 3 (explaining that "this offer is also contingent upon your signing the attached agreement . . . [i]f you do not agree with the terms of this document, this offer of employment, including all of its terms, will be rescinded."). Thus, by signing the revised offer letter and accepting employment, she agreed to the terms of the Confidentiality Agreement. *See Zhang*, 367 F. Supp. 3d at 914 (holding that employee agreed to arbitration clause even though it was unsigned because a signed offer letter "clearly stated that acceptance of employment and continuation of employment would be deemed to be acceptance of the agreement to arbitrate").

Krause attempts to distinguish *Zhang* because the Confidentiality Agreement here was not attached (or reattached) to the exact email as the revised offer. ECF No. 48 at 19–20. Therefore, according to Krause, the revised offer did not encompass the Confidentiality

11

Agreement. *Id.* That is a distinction without a difference. It mattered in *Zhang* that the arbitration policy was sent with the offer letter because it afforded the employee "the opportunity to review its terms prior to accepting the offer of employment." 367 F. Supp. 3d at 914. Here, Krause also had an opportunity to review the terms of the Confidentiality Agreement prior to accepting Integra's offer of employment because the Confidentiality Agreement was sent to Krause with the original offer letter and in the same email chain as the revised offer letter. ECF No. 40-1 at 2–4. Further, the plain text of the revised offer letter conditioned Krause's employment on agreement to the Confidentiality Agreement sent just days earlier. Because she agreed to the revised offer letter and accepted employment, Krause agreed to be bound by the Confidentiality Agreement. *Zhang*, 367 F. Supp. 3d at 914. As to the first question presented, the Court holds that the Confidentiality Agreement is enforceable against Krause.

### B.    Applicability of the Forum-Selection Clause

Krause alternatively argues that her claims are not within the scope of the forum-selection clause, so the clause is inapplicable to this case. The Court agrees, for two independent reasons.

#### i.    The Forum-Selection Clause is Limited to Claims Related to the Confidentiality Agreement

"Before a district court can even consider a forum selection clause in its transfer analysis, it first must decide whether the clause applies to the type of claims asserted in the lawsuit." *Terra Int'l*, 119 F.3d at 692. To do so, the Court must "analyz[e] the language of the clause." *Id.* In Minnesota, "[i]n interpreting a contract, the language is to be given its

plain and ordinary meaning," and courts "read contract terms in the context of the entire contract and will not construe the terms so as to lead to a harsh and absurd result." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

The forum-selection clause here is located within the Confidentiality Agreement, which is referred to in the contract simply as the "Agreement."  ECF No. 53-1 at 3.  The Confidentiality Agreement contains a non-compete section, *id.* at 4–5, and a section requiring that Krause not disclose company secrets, *id.* at 5–6.  It also contains a forum-selection clause stating:

> I also agree and consent that any and all litigation between Integra and me relating to this Agreement will take place exclusively in the State of New Jersey, and I consent to the jurisdiction and venue of the federal and/or state courts in the State of New Jersey.

*Id.* at 8.

By its terms, then, the forum-selection clause applies only to litigation "relating to *this Agreement.*"  *Id.* (emphasis added).  And the Confidentiality Agreement explicitly and repeatedly is referred to as the "Agreement."  The Court thus finds it unambiguous that the forum-selection clause only applies to litigation relating to the Confidentiality Agreement.

The Eighth Circuit's *Terra International* is instructive, if not dispositive.  There, companies entered a licensing agreement for a manufacturing product.  *Terra Int'l*, 119 F.3d at 690.  That agreement contained a forum-selection clause which stated that "[a]ny dispute or disputes arising between the parties hereunder" must be brought in Mississippi. *Id.*  The question before the court was whether certain tort causes of action were covered by the forum-selection clause or whether that clause was limited to actions related only to

the licensing agreement itself. *Id.* at 692. The Eighth Circuit held that a "more narrow interpretation of the forum selection clause . . . is more compelling" because "the parties *uniformly* use the word 'hereunder' in several other portions of the license agreement to mean 'under this Agreement,'" and the drafter could have drafted "an explicitly broad clause" but chose not to. *Id.* at 693 (emphasis added).

The same is true here. "This Agreement" as referenced in the forum-selection clause can only reasonably be read to refer to the Confidentiality Agreement because the contract uniformly uses that term to refer to itself. Krause's tort, employment discrimination, and retaliation claims are wholly unrelated to the Confidentiality Agreement's non-compete and confidentiality provisions, so the forum-selection clause is inapplicable. *See Ormand v. Sanford Clinic*, No. 09-cv-4161-KES, 2010 WL 2207745, at *2 (D.S.D. May 26, 2010) (explaining that an employment agreement's forum-selection clause only covered claims "that arise under the employment agreement because the sentence containing the forum selection clause begins with the phrase '[t]his Agreement'").

Integra argues that "this Agreement" should be read more broadly and should cover all claims related to Krause's employment agreement because the Confidentiality Agreement was accepted in conjunction with the offer letter. ECF No. 38 at 13–16. But the cases it cites are easily distinguishable.

For example, in *Gannon*, an employee signed an "Offer Letter, Employee Agreement, and Repayment Agreement." 2017 WL 4685041, at *2. The Employee Agreement "primarily deal[t] with confidentiality, the restrictive covenant, and proprietary inventions," and contained a forum-selection clause that "[a]ny dispute arising out of or

14

related to this Agreement" must be brought in Minnesota state court.  *Id.* at *3.  The Repayment Agreement, which did not contain a forum-selection clause, was "a one-page document that set[] out the terms of . . . compensation under a sales guarantee arrangement" and required the employee to repay certain amounts if he left the company early.  *Id.* at *2.

Medtronic sued under the terms of the Repayment Agreement after the employee resigned early.  *Id.* at *2.  At issue was whether the "forum selection clause from the Employee Agreement [could] apply to Medtronic's suit under the Repayment Agreement."  *Id.* at *3.  The court found that it did.  First, it noted that the agreements were "executed at the same time, for the same purpose," and were therefore considered "one instrument."  *Id.* at *4.  (citation omitted).  Next, the court found that the forum-selection clause was broadly written to encompass more than just claims relating to the Employee Agreement in which it was located, because the clause encompassed "all disputes 'arising out of *or related to* this Agreement.'"  *Id.*  Reasoning that contracts should be read to avoid rendering terms meaningless, the court explained that "because the words 'arising out of' must mean disputes about the terms of the Employee Agreement—that is, confidentiality, restrictive covenant, etc.—the words 'or relating to' *must mean something else*."  *Id.* (emphasis added).  And the court found that the Repayment Agreement was "'related to' the Employee Agreement."  *Id.*  The Eighth Circuit agreed.  *Medtronic Sofamor Danek, Inc. v. Gannon*, 913 F.3d 704, 708 (8th Cir. 2019).

But the language of the Confidentiality Agreement is materially different here because it does not contain the phrase "arising out of or related to."  The forum-selection

clause unambiguously applies only to claims "relating to *this* Agreement."  ECF No. 53-1 at 8 (emphasis added).  Consequently, there is no concern that Krause's reading of the Confidentiality Agreement would render terms meaningless.  And had Integra intended for the forum-selection clause to refer to all claims Krause could bring against Integra, it could easily have written the clause as "any and all claims relating to Krause's employment," or "any and all claims relating to Krause's relationship with Integra."  *See Terra Int'l*, 119 F.3d at 693 (construing a forum-selection clause narrowly because the drafter "knew how to draft an explicitly broad clause when it wanted").

Accordingly, because the forum-selection clause applies only to claims relating to the Confidentiality Agreement, it is inapplicable here.

### ii.    Krause's Claims do Not Relate to Her Employment Agreement

Even if the forum-selection clause applied to claims outside of the Confidentiality Agreement, and encompassed claims related to the offer letter as well, the Court would nevertheless find it inapplicable because its scope does not cover the statutory and tort-based claims Krause brings.

Tort claims are subject to a contract's forum-selection provision only where they are "closely related to the interpretation of the contracts and fall within the ambit of the express agreement."  *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997).  Determining whether a contractual choice-of-law agreement covers a given tort claim is "a rather case-specific exercise," but courts have explained that claims are "closely related" to a contract where, for instance, the tort claims could be brought as "parallel claim[s] for breach of contract."  *Terra Int'l*, 119 F.3d at 694; *see also Nw. Airlines*,

16

111 F.3d at 1392 (tort claims that "stem from . . . failure promptly to [perform] . . . as required under the contracts" were sufficiently related); *Holden Farms*, *Inc. v. Hog Slat*, *Inc.*, 347 F.3d 1055, 1061 (8th Cir. 2003) (tort claims that "speak to the provisions of the contract" are subject to a choice of law provision). For example, claims such as "negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment" that relate to a parties' lack of performance under a contract fall under a forum-selection provision. *Nw. Airlines*, 111 F.3d at 1392.

Applying this framework, the Court has little difficulty concluding that Krause's claims are not covered by the forum-selection clause because they are not "closely related to the interpretation of the contracts." *Nw. Airlines*, 111 F.3d at 1392. Krause alleges claims of discrimination based on her whistleblower activity and her sex, retaliation because she opposed the alleged discrimination, hostile work environment, intentional infliction of emotional distress, and defamation. None of these claims allege that Integra violated the terms of her employment agreement. Critically, each can be resolved without regard to any of the contractual provisions found in the offer letter.

Integra points to no specific provision of the offer letter that is purportedly implicated by her claims.[3] Nor does it provide any case law holding similar claims were sufficiently related to a contractual employment agreement. Instead, Integra seems to argue that because the Confidentiality Agreement and offer letter are viewed as one contract, they

---

[3]    That Krause may use her employment agreement for purposes of calculating damages does not affect the analysis, as what matters at this stage is whether *liability* for the claims involves interpretation of the contract. *See Hall*, 326 F. Supp. 3d at 778.

should be construed as covering all aspects of Krause's "employment relationship," and that the phrase "this Agreement" found in the forum-selection clause is more properly read as "this *relationship.*"  ECF No. 38 at 14 (emphasis added).  But again, Integra cites no authority for such an expansive reading, and the Court refuses Integra's invitation to transform the unambiguous forum-selection clause into an all-encompassing waiver of Krause's right to sue Integra where she chooses for wholly unrelated tort claims.  *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364–65 (Minn. 2009) ("[W]hen a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction.").  That would require a significantly more explicit clause.  *See Viet Fam., Inc. v. Freidel*, 754 F. Supp. 3d 840, 845 (D.S.D. 2024) ("When a forum-selection clause either unambiguously applies to tort claims or excludes tort claims, the language controls.").

Accordingly, because Krause's tort claims do not relate to her contractual employment agreement, they are unrelated to the forum-selection clause.  As to the second question presented, the Court holds that Krause's claims are outside the forum-selection clause's scope.

## II.    Traditional Section 1404(a) Factors

Because the forum-selection clause does not apply here, the Court next considers whether it should nevertheless transfer venue under the traditional Section 1404(a) factors.

"Federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  *Terra Int'l*, 119 F.3d at 695.  For this reason, "[t]ransfer motions

18

are not granted as a matter of course, and it is the movant's burden to show that the relevant factors make the requested forum more convenient than the forum in which the case was filed." *In re Eyewear Antitrust Litig.*, No. 23-cv-3065 (KMM/JFD), 2024 WL 2956631, at *4 (D. Minn. June 12, 2024). Courts employ a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra Int'l*, 119 F.3d at 691. While there is no "exhaustive list of specific factors" for a court to consider, courts generally consider (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Id.*

### A.    Convenience of the Parties

"In assessing the relative convenience of the parties, the logical starting point is a consideration of the parties' residences in relation to the district court chosen by the plaintiff and the proposed transferee district." *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 409 (D. Minn. 2009) (citation omitted) (cleaned up). There is no dispute that Krause resides in Minnesota, nor that Integra's headquarters and offices relevant to this litigation are in New Jersey, Massachusetts, and Pennsylvania.

Where a defendant is a corporate party, the Court may properly consider the "expenses for airfare, meals and lodging, and losses in productivity from time spent away from work" that the party would endure for employees that would attend in-person proceedings. *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010). On this point, Integra states that the "vast majority" of its witnesses are likely to be its own employees from New Jersey or Massachusetts, ECF No. 38 at 5, 7, or employees who routinely travel to Integra's

19

New Jersey headquarters, ECF No. 51 at 16.  Therefore, Integra argues that requiring those employees to travel to Minnesota would not only cost Integra money but would also take the employees away from their duties.  And "[t]hese costs would be significantly minimized or avoided by transfer," *In re Apple*, 602 F.3d at 914, because a transfer would not require New Jersey-based employees to travel away from work and would not require non-New Jersey based employees to travel to a state to which they otherwise do not normally travel.

Krause does not dispute that Integra would incur expense and lose productivity but argues that the Court should "consider a party's ability to bear expenses to travel to the other forum" and points out that Integra is a "large international company" that "can easily afford the travel expenses associated with litigation."  ECF No. 48 at 6–7 (citing *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015)).  While Krause is correct that the Court may consider a party's financial ability to litigate in another forum, the question is not whether Integra has the financial ability to do so but whether the Court could lessen Integra's burden without significantly inconveniencing Krause.  *In re Apple*, 602 F.3d at 913–14 (considering whether Apple's costs "would be significantly minimized or avoided by transfer" despite Apple's ability to litigate in forum outside of California).

Accordingly, the Court must weigh Integra's legitimate inconvenience against Krause's.  On this point, Krause admits that she once made a six-figure salary but states that she has been unemployed for nearly a year and now faces financial limitations.  *See* ECF No. 49 ¶ 9; ECF No. 48 at 8.  But even if true, modern courts have observed that "the

practical realities of litigation make it very unlikely" that a plaintiff is "going to have to travel to personally attend court proceedings on more than a few occasions," because depositions will occur close to home and a litigant need not appear for motion practice. *In re Eyewear Antitrust Litig.*, 2024 WL 2956631, at \*6. Thus, Krause would likely travel to New Jersey for this case no more than a handful of times.

On the other hand, Integra's employees are not uniformly located in or around New Jersey. Further, the Court questions the seriousness of the loss of productivity Integra would incur, given that a substantial amount of its employees already works remotely from all over the country. To the extent those employees would need to travel to Minnesota, a centrally-located venue, it would only be for trial, and they may be more than capable of working from this venue or travelling here while also going to New Jersey.

Ultimately, both sides would incur expenses by traveling to the other's preferred forum. The Court therefore considers this factor neutral.

### B.    Convenience of the Witnesses

"The convenience of the witnesses is generally considered the most important factor when determining whether to grant a transfer." *Shared Memory Graphics LLC v. Apple Inc.*, No. 5:09-cv-5128 (BSM), 2010 WL 5151612, at \*4 (W.D. Ark. May 27, 2010). "In analyzing this factor, the Court 'must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum.'" *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014) (quoting *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991)). The Court

may also consider "the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony." *Terra Int'l*, 119 F.3d at 696.

Because this factor mostly concerns whether witnesses will be available for trial, a court focuses on "non-party witnesses since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 885–86 (citation omitted). Non-party witnesses, on the other hand, cannot be forced to travel more than 100 miles. *See* Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

### i.    Non-Party Witnesses

The parties acknowledge that most relevant witnesses are Integra employees, which are considered witnesses of a party. ECF No. 38 at 8; ECF No. 48 at 11–14. Indeed, Integra itself puts forth no non-party witnesses that it anticipates calling at trial. ECF No. 51 at 12–14. Krause, on the other hand, identifies a handful of potential non-party witnesses, such as her husband and medical doctors, each of whom would generally testify to the "emotional distress and medical issues" she experienced as a result of Integra's alleged misconduct. ECF No. 48 at 14–15. Therefore, to the extent that any non-party witnesses exist, those parties are in Minnesota. Because "preference is for that testimony to be given, where possible, in person," the burden of producing non-party witnesses therefore falls exclusively on Krause. *In re Eyewear Antitrust Litig.*, 2024 WL 2956631, at *8. This factor weighs in Krause's favor.

### ii.    Party Witnesses

Integra argues that any inconvenience to Krause's non-party witnesses does not outweigh the substantial inconvenience to the "vast majority" of party witnesses. ECF No. 51 at 12. Integra observes that over 300 of the 525 employees in Integra's quality department are in New Jersey, Pennsylvania and Massachusetts; 33 of 66 of Integra's upper management employees are in New Jersey; 42% of all employees are in New Jersey and Massachusetts; and only 1% of Integra's employees are in Minnesota. ECF No. 52 ¶¶ 3–4, 6.

The shortcoming in this argument is that Integra does not name any employee-witnesses it believes to be relevant. *In re Eyewear Antitrust Litig.*, 2024 WL 2956631, at *7 (explaining that the party seeking transfer must "identify who the [] witnesses are, what the substance of their proposed testimony will be, and explain how that testimony is relevant and material to the litigation"). It is entirely possible, for instance, that the upper management employees who are likely to be called as witnesses in this case are in the half of Integra's upper management who *do not* live in New Jersey, and for whom a New Jersey forum may be just as inconvenient as a Minnesota forum. Indeed, one executive the Court believes is sure to have relevant information—former CEO Jan De Witte—now resides in Belgium. ECF No. 49 ¶ 14. For an international witness, one international forum or another is "roughly equivalent, for . . . persons coming from abroad will be required to travel a significant distance no matter where they testify." *In re Apple, Inc.*, 602 F.3d at 914 (internal quotation marks omitted) (citation omitted).

Nevertheless, Integra does maintain that all out-of-state employees travel frequently to New Jersey, so a New Jersey forum is more convenient and would relieve its attorneys from traveling to those various employees' respective states for depositions.[4] ECF No. 51 at 14. In essence, Integra argues that New Jersey works better as a "hub" of the litigation.

Krause, on the other hand, asserts that current or former executives live in California and Florida and that three relevant employees live in Minnesota. ECF No. 49 ¶¶ 10, 13. Krause also identifies two employees who live in or closer to Minnesota than New Jersey and have particularly relevant knowledge: one who lives in Minnesota and "has knowledge regarding Integra's withholding of information relating to quality issues from [Krause]," and another—named in the complaint—who lives in Utah and has "knowledge regarding the conduct of" De Witte and Schwartz towards Krause. *Id.* Integra acknowledges that some employees live outside of New Jersey but argues that those employees would not be inconvenienced by a New Jersey forum because they already "routinely travel to New Jersey" for work and "Integra could schedule routine work trips to coincide with any need to testify or participate in these proceedings." ECF No. 51 at 13–14.

---

[4]    This may have been true in the past, but the Court doubts whether Integra's attorneys will be traveling across the country for discovery as conducting depositions "remotely is becoming the 'new normal.'" *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020). Indeed, Federal Rule of Civil Procedure 30(b)(4) allows a party to take a deposition remotely with leave of the Court or upon agreement between the parties, and "leave to take depositions by remote means should be granted liberally." *List v. Carwell*, No. 18-cv-2253 (DSD/TNL), 2020 WL 5988514, at *8 (D. Minn. Oct. 9, 2020) (citations omitted).

Ultimately, because the Court presumes that party witnesses will travel to any forum, the Court finds this factor to be neutral. *See Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 885–86. But because multiple non-party witnesses live in Minnesota (or closer to Minnesota than New Jersey), the convenience-of-the-witnesses factor favors Krause.

### C.    Interests of Justice

When considering whether the interests of justice favor one forum over another, courts might consider such factors as: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696. Here, the parties provide argument on two of these factors: the plaintiff's choice of forum and the advantages of having a local court determine local law.[5]  ECF No. 38 at 9–10; ECF No. 48 at 16.

### i.    Choice of Forum

"In general, federal courts give considerable deference to a plaintiff's choice of forum." *Terra Int'l*, 119 F.3d at 695. This is true, in part, because "'[t]here is an appropriateness' in holding trial in a diversity case in the venue that is 'at home with the state law that must govern the case.'" *In re Apple, Inc.*, 602 F.3d at 915 (quoting *Gulf Oil*

---

[5]    Krause briefly alludes to the "conflict of law" factor but provides no argument with respect to that factor. ECF No. 48 at 16. Given the lack of argument, the Court will disregard this factor. In any event, the Court is unable to find *any* case that expounds on what this factor entails, though some courts refer to it as "the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (alteration in original) (citation omitted).

*Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). Here, Krause alleges both federal and Minnesota causes of action, and the fact that a court will therefore need to apply Minnesota law supports her argument that Minnesota is a more appropriate venue. *See generally* ECF No. 8.

On the other hand, courts "provide less deference to the plaintiff's choice of forum when the plaintiff does not sue where the conduct complained of occurred." *In re Eyewear Antitrust Litig.*, 2024 WL 2956631, at *10; *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home."). Here, the complained-of conduct occurred in New Jersey and Massachusetts. Indeed, Krause's complaint is focused exclusively on statements made to her or actions undertaken by executives in those states. She may have felt the effect of those statements in Minnesota, but "courts generally focus on the locus of the allegedly unlawful conduct rather than the place where a plaintiff felt its effects." *In re Eyewear Antitrust Litig.*, 2024 WL 2956631, at *10; *see also In re Apple*, 602 F.3d at 914 (holding that where "misconduct originated from" Apple's California headquarters, the "'alleged wrongs' occurred in Northern California").

Because Krause brings Minnesota causes of action, which supports a Minnesota venue, but the actions occurred in New Jersey, which supports a New Jersey venue, the Court finds this factor to be neutral.

### ii. Localized Decision-Making

Krause also argues that "there is a benefit to having Minnesota courts decide issues of Minnesota law." ECF No. 48 at 16. The Eighth Circuit has likewise expressed in

26

diversity cases "an appropriateness" in holding trial in the venue that is "'at home with the state law that must govern the case.'"  *In re Apple*, 602 F.3d at 915 (quoting *Gilbert*, 330 U.S. at 509).  But a federal district court is "faced almost daily with the task of applying some state's law other than that of the forum state."  *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001); *see also Atl. Marine*, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit.").  Krause has not argued that this case presents any "exceptionally arcane features" of Minnesota law "that are likely to defy comprehension by a federal judge sitting in" New Jersey.  *Atl. Marine*, 571 U.S. at 67–68.  This factor is therefore neutral.

## CONCLUSION

The District of Minnesota is undoubtedly more convenient for Krause personally.  But the District of New Jersey is more convenient for Integra.  Because, however, the convenience-of-the-witnesses factor tips ever so slightly in favor of keeping this matter in Minnesota, and the remaining relevant factors do not weigh in favor of transferring this case to New Jersey, the Court concludes that Integra has not met the "heavy burden" to show that this case should be transferred.  *Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 884 (citation omitted).

Accordingly, based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Integra's Motion to Transfer Venue (ECF No. 37) is **DENIED**.

Dated: July 11, 2025                    *s/Laura M. Provinzino*
                                        Laura M. Provinzino
                                        United States District Judge