UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN KRAUSE, | Case No. 24-cv-4339 (LMP/ECW) |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS |
| INTEGRA LIFESCIENCES CORPORATION, | |
| Defendant. | |

Jonathan D. Miller, Debra L. Weiss, and Anthony W. Joyce, **Meagher & Geer, P.L.L.P., Minneapolis, MN**, for Plaintiff.

C.J. Schoenwetter, **Bowman and Brooke LLP, Minneapolis, MN**; John T. McDonald, **Reed Smith LLP, Princeton, NJ**; and Joseph J. Mammone, Jr., **Reed Smith LLP, Dallas, TX**, for Defendant.

Plaintiff Susan Krause ("Krause") alleges that her former employer, Defendant Integra LifeSciences Corporation ("Integra"), discriminated against her because she engaged in whistleblower activity and because of her sex, retaliated against her because she opposed the alleged discrimination, created a hostile work environment, inflicted emotional distress on her intentionally, and defamed her. ECF No. 8 ¶¶ 81–132.[1] Integra moves to dismiss only Krause's intentional infliction of emotional distress claim (Count Five) and defamation claim (Count Six). ECF No. 43. For the following reasons, the Court grants Integra's motion.

---

[1] ECF No. 8 is currently sealed in its entirety pursuant to Local Rule 5.1. A publicly filed and redacted version is found at ECF No. 65. The Court cites to the sealed complaint.

## BACKGROUND[2]

Integra is a "global medical technology company that develops, manufactures, and sells medical products." ECF No. 8 ¶¶ 2, 8. In June 2021, Integra hired Krause as its Corporate Vice President and Chief Quality Officer ("CQO"), a role in which she served until March 11, 2024. *Id.* ¶ 7. Krause was hired by Integra, which is headquartered in New Jersey, with the knowledge and acceptance that she would live in Minnesota, would work from Minnesota most of the time, and would travel across the country as necessary. *Id.* ¶ 4.

During Krause's employment, Integra was led in part by Chief Executive Officer Jan De Witte ("De Witte") and Chief Legal Officer Eric Schwartz ("Schwartz"). *Id.* ¶¶ 9–10. Krause was hired to take over Integra's quality group, a 600-person group responsible for overseeing the quality of over 25,000 different products which are produced across the country. *Id.* ¶ 11.

Krause alleges that De Witte and Schwartz repeatedly stymied her efforts to improve quality issues and repeatedly "threatened, yelled at, used profanity toward, and verbally abused [her] in retaliation for her refusal to disregard significant and potentially dangerous quality issues." *Id.* ¶¶ 12–13. For instance, after the FDA investigated Integra's Boston facility in November 2021 and discovered quality control issues there, the FDA required

---

[2] Because Integra's motion is limited to Krause's intentional infliction of emotional distress and defamation claims, this factual background focuses on allegations relevant to those claims, allegations that are accepted as true at this stage. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

Integra to develop a solid remediation plan or face more severe adverse action. *Id.* ¶ 17. Over the following year, Krause worked "exhaustively" while allegedly being undercut by De Witte, making it "nearly impossible to address the necessary quality work." *Id.* ¶¶ 18–22. After the FDA determined that a recall was necessary, De Witte allegedly pressured Krause to put the product back on the market before the product was safe, and, when she refused, he hurled "constant verbal abuse and hostility." *Id.* ¶ 22.

In November 2022, Krause was hospitalized for high blood pressure. *Id.* ¶ 27. While hospitalized, De Witte told her that she was to attend an executive meeting in New York on Friday evening. *Id.* Krause was released from the hospital on that Wednesday and informed Integra that she could not fly to the meeting because of her health issues, but De Witte nevertheless expressed his displeasure at her for not attending the meeting. *Id.*

The FDA conducted another investigation of the Boston facility in March 2023 and demanded some internal documents. *Id.* ¶ 33. Schwartz initially refused to provide those documents, but he later consented to their release after Krause raised the noncompliance to De Witte directly. *Id.* Schwartz subsequently called Krause and "repeatedly yelled and swore at her." *Id.* ¶ 34. Similarly, in May 2023, Krause objected to Integra's plan to ship inventory from Europe to Boston and "illegally relabel it for sale in the United States." *Id.* ¶ 40. De Witte nonetheless instructed Krause to circumvent the law because "no one would know." *Id.* On June 1, 2023, Schwartz "ridiculed, swore at, undermined, and humiliated" Krause—in front of a group of employees and outside counsel—because the Boston remediation efforts were not complete, asking her, "What the fuck have you been doing? You've been in Boston every week for the last couple months and all issues should have

3

been fixed by now." *Id.* ¶ 44. And in December 2023, when Integra's Product Safety Board decided to recall one of Integra's products, De Witte and Schwartz allegedly tried to override the Board's decision, going as far as to threaten to withhold Krause's bonus if the product was recalled, *id.* ¶¶ 52–53.

De Witte and Schwartz also pressured Krause to "remove negative information" from various safety presentations Krause made to Integra's Board of Directors. *Id.* ¶ 56. When Krause tried to push back, De Witte and Schwartz "embarrassed her in meetings; used sarcastic, condescending, or otherwise unprofessional tones when speaking to her; disinvited her from meetings; and retaliated by threatening to withhold compensation." *Id.* ¶ 57.

Finally, on March 7, 2024, Schwartz disagreed with a proposed action plan presented by Krause and "angrily voiced his disagreement with the assessment, and started yelling at [Krause]" until De Witte stopped him. *Id.* ¶ 69. The following day, De Witte demanded that Krause sign a letter to the FDA informing the FDA that a whistleblower's allegations were false; Krause refused, but De Witte and Schwartz nevertheless pressured her to sign the letter. *Id.* ¶ 70.

Krause resigned three days later but alleges that De Witte's and Schwartz's misconduct did not stop. *Id.* ¶ 72. For instance, during a May 6, 2024 earnings call and in response to an investor's question "regarding the need to re-visit long range planning for the Boston facility given the delayed restart of production," De Witte informed the investors that Integra had "made changes to the operations and quality leadership and structure to ensure the right focus and capabilities [are] applied to Boston." *Id.* ¶ 73.

4

Krause alleges that the statement implied that Krause was the problem with the Boston facility. *Id.*

In general, Krause alleges that Integra's conduct led her to experience "depression, post-traumatic stress disorder, anxiety, nightmares, insomnia, and other mental health issues" along with "physical injury including hypertension, headaches, nausea and vomiting, [and] gastrointestinal issues." *Id.* ¶¶ 75–76. She has undergone mental health therapy and has been prescribed medication for high blood pressure. *Id.* ¶¶ 19, 77.

Krause brought her complaint in Minnesota state court on November 8, 2024, and Integra thereafter removed it to this Court based on diversity jurisdiction. ECF No. 1. Integra now moves to dismiss counts five and six of Krause's complaint, which claim that Integra's actions constitute intentional infliction of emotional distress ("IIED") and defamation under Minnesota law. ECF No. 8 ¶¶ 118–32.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

## I. Intentional Infliction of Emotional Distress

Under Minnesota law, an IIED claim requires proof that: (1) the conduct complained of was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; (4) and the distress suffered was severe. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999). Minnesota courts, though, have routinely held that IIED claims should be "sharply limited to cases involving particularly egregious facts." *Yang v. City of Minneapolis,* 607 F. Supp. 3d 880, 900–01 (D. Minn. 2022) (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983)). Accordingly, "[c]laims for intentional infliction of emotional distress are disfavored under Minnesota law." *Njema v. Wells Fargo Bank, N.A.*, 124 F. Supp. 3d 852, 875 (D. Minn. 2015) (citing *Mrozka v. Archdiocese of St. Paul & Minneapolis*, 482 N.W.2d 806, 813–14 (Minn. Ct. App. 1992)).

Integra argues that Krause did not adequately plead any of the elements of an IIED claim.[3] ECF No. 44 at 4–12. As to the first element—that the conduct complained of was extreme and outrageous—the Court agrees. In Minnesota, extreme and outrageous conduct is conduct that is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 865 (Minn. 2003) (citation omitted). Conduct that amounts only to "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" does not suffice. *Id.* (citation omitted).

---

[3] Integra also argues that Krause's IIED claim is preempted under Minnesota law by Krause's claims under the Minnesota Human Rights Act. ECF No. 44 at 10–11. Because the Court dismisses the IIED claim on other grounds, the Court need not address the issue.

Instead, to qualify as extreme and outrageous, "the conduct must lead an average member of the community to exclaim 'Outrageous!'" *Id.*

Extreme and outrageous is "a high standard and especially difficult to meet in a case arising from the workplace." *Peterson v. HealthEast Woodwinds Hosp.*, No. A14-1409, 2015 WL 4523558, at *5 (Minn. Ct. App. June 29, 2015). This is because an employer's failure to "keep[] with the highest standards of professionalism or even common courtesy . . . is a far cry from engaging in conduct that is so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Glass v. IDS Fin. Servs., Inc.*, 778 F. Supp. 1029, 1074 (D. Minn. 1991). Generally, then, an "employer's disciplining and criticizing employees does not in itself constitute sufficient egregious conduct." *Corum v. Farm Credit Servs.*, 628 F. Supp. 707, 719 (D. Minn. 1986). And even if the alleged conduct goes beyond discipline or termination, there is a difference between unprofessional workplace conduct and outrageous conduct. *E.g.*, *Hubbard*, 330 N.W.2d at 439–40 (noting that even if an employer's "actions may have made [plaintiff] feel harassed, and may even have been intended to harass," they do not necessarily rise to "extreme and outrageous conduct"); *Radcliffe v. Securian Fin. Grp., Inc.*, 906 F. Supp. 2d 874, 895 (D. Minn. 2012) (explaining that "unprofessional, objectionable conduct" by employer is distinct from "outrageous conduct"); *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 971 (D. Minn. 2009) ("[A] work environment in which co-workers or supervisors criticize, taunt, or harass another employee, does not present the egregious conduct required for an IIED claim."); *Peterson*, 2015 WL 4523558, at *5 (holding that an

7

employer "continually berat[ing]" and questioning an employee's competency are "insufficient to constitute outrageous conduct for purposes of an IIED claim").

With the above in mind, the Court concludes that none of the alleged conduct by De Witte and Schwartz rose to the level of "extreme and outrageous." First, Krause alleges that De Witte and Schwartz "threatened, yelled at, used profanity toward, and verbally abused" her. ECF No. 8 ¶ 13; *see also id.* ¶¶ 34, 38, 44, 69. Such conduct is undoubtedly "unprofessional [and] objectionable," *Radcliffe*, 906 F. Supp. 2d at 895, but is not "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community," *Glass*, 778 F. Supp. at 1074 (citation omitted). Courts applying Minnesota law to similar claims have routinely reached the same conclusion. *See, e.g.*, *Langeslag*, 664 N.W.2d at 865 (internal quotation marks omitted) (citation omitted) ("Liability for intentional infliction of emotional distress does not extend to insults, indignities, threats, annoyances, petty oppressions, or other trivialities."); *Deering v. Lockheed Martin Corp.*, No. 20-cv-1534 (DSD/BRT), 2021 WL 6776251, at *4 (D. Minn. Apr. 22, 2021) ("[O]verly critical performance reviews, negative statements regarding her work performance, denial of promotions and opportunity for advancement, denial of support given her workload, and her eventual termination . . . are not extreme and outrageous and simply do not meet the high bar required to plead a claim for IIED.").

Krause also argues that Integra's attempts to pressure her into certifying that certain products were safe and to illegally tell the FDA that a whistleblower complaint was false constitute extreme and outrageous conduct. ECF No. 60 at 13–14; *see* ECF No. 8 ¶¶ 22, 40, 53, 56, 70. In *Peterson*, the Minnesota Court of Appeals explicitly rejected a similar

8

argument, holding that "asking an employee to engage in unethical or potentially unlawful conduct does not rise to the level of 'extreme and outrageous' conduct to support an IIED claim, even though it may be wrong for other reasons." 2015 WL 4523558, at *5. Krause attempts to distinguish *Peterson* because "asking an employee to engage in unethical and 'potentially' unlawful conduct" is different than "demanding that the Chief Quality Officer lie to the FDA about the relative safety of a medical device that could endanger the lives of patients." ECF No. 60 at 13. But in *Peterson*, the plaintiff was a former "patient and family advocate" whose "duties included recording patient grievances, maintaining investigation records, meeting with patients and their families, and serving on the hospital's ethics committee." 2015 WL 4523558, at *1. Peterson's supervisor allegedly pressured her into changing the way she maintained her files in a way Peterson believed to be potentially unlawful. *Id.* Consequently, although not an identical situation, *Peterson* plainly stands for the proposition that a supervisor's demand that an employee do her job in a manner that is unethical and potentially violates the law does not rise to the level of extreme and outrageous conduct under Minnesota law.

Finally, Krause alleges that statements made by De Witte in an earnings call, in which he allegedly informed investors that Integra had "made changes to the operations and quality leadership and structure to ensure the right focus and capabilities" were extreme and outrageous. ECF No. 60 at 13. But because the Court concludes that the statement was not defamatory (as discussed below), the statement does not rise to the level of extreme and outrageous. *López Prater v. Trs. of Hamline Univ. of Minn.*, 693 F. Supp. 3d 1009,

1030 (D. Minn. 2023) ("A plaintiff cannot plausibly allege that conduct rises to the level of extreme and outrageous based on statements that do not constitute defamation.").

Because Krause's allegations, even taken as true, do not plausibly allege that Integra's actions were "extreme and outrageous" to the extent that they were "so atrocious" that they were "utterly intolerable to the civilized community," *Langeslag*, 664 N.W.2d at 865 (citation omitted), the Court dismisses Krause's IIED claim.

## II.  Defamation

Integra also argues that Krause fails to state a valid claim for defamation. ECF No. 44 at 13–21. Krause alleges two defamatory statements. First, Krause asserts that De Witte's statement in the May 2024 earnings call that Integra had "made changes to the operations and quality leadership and structure to ensure the right focus and capabilities [are] applied to Boston," ECF No. 8 ¶ 73 ("May 2024 Statement"), was defamatory because it misled investors to believe she was the problem in Integra's efforts to remediate the Boston facility, ECF No. 60 at 19. Second, Krause contends that Schwartz's statement on June 1, 2023, made in front of outside counsel, asking her "What the fuck have you been doing? You've been in Boston every week for the last couple months and all issues should have been fixed by now," ECF No. 8 ¶ 44 ("June 2023 Statement"), was defamatory because it "undermined her credibility and directly damaged her reputation," ECF No. 60 at 21.

To adequately plead defamation under Minnesota law, a plaintiff must allege: (1) there was a published statement of fact; (2) of and concerning the plaintiff; (3) which was false; and (4) the factual statement damaged the plaintiff's reputation and "lowered

her estimation in the community." *Yang v. Robert Half Int'l, Inc*., 79 F.4th 949, 963 (8th Cir. 2023) (citing *Lewis v. Equitable Life Assurance Soc'y of U.S.*, 389 N.W.2d 876, 886 (Minn. 1986)). "A statement is defamatory when it 'tend[s] to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation.'" *Erickson v. Sawyer*, 650 F. Supp. 3d 758, 765 (D. Minn. 2023) (alteration in original) (quoting *Phipps v. Clark Oil & Refin. Corp.*, 408 N.W.2d 569, 573 (Minn. 1987)).

To be "of and concerning" a plaintiff, the statement need not identify the plaintiff by name but must "reasonably be understood to apply to a particular plaintiff." *Schuster v. U.S. News & World Rep., Inc.*, 602 F.2d 850, 854 (8th Cir. 1979); *see also Conness v. CBS Broad., Inc.*, No. 19-cv-574 (WMW/HB), 2019 WL 6873985, at *2 (D. Minn. Dec. 17, 2019) (quoting *Glenn v. Daddy Rocks, Inc.*, 171 F. Supp. 2d 943, 948 (D. Minn. 2001)) ("[A] plaintiff need not be named in the defamatory statement as long as the reader would understand 'by fair implication' that the statement is directed at the plaintiff."). As a result, statements that are merely "vague and general references to a comparatively large group, without mentioning the plaintiffs, do not constitute an actionable defamation." *Schuster*, 602 F.2d at 854. And statements that require the listener to engage in "further inquiry" to determine the referenced individual (or individuals) are not defamatory. *Daddy Rocks*, 171 F. Supp. 2d at 948.

### A.     The May 2024 Statement

Krause does not adequately allege that the May 2024 Statement was defamatory because the statement cannot reasonably be read as "of and concerning" her. *Yang*, 79 F.4th at 963. Krause acknowledges, of course, that the May 2024 Statement did not name her

11

specifically. ECF No. 60 at 18–19. But Krause nevertheless argues that the context of the May 2024 Statement proves that it was "of and concerning" her because it can only reasonably be read as relating to the firing of the leader of quality control, and the investors knew that she was the CQO. *Id.* at 19–20.

Krause's argument is untethered from the actual statement made by De Witte. Two months after Krause resigned, and in response to an investor question about the Boston facility's production issues, De Witte stated that Integra "made changes to the operations and quality leadership and structure to ensure the right focus and capabilities [are] applied to Boston." ECF No. 8 ¶ 73. That vague statement could refer to any number of changes Integra made to both the operations and quality departments. For instance, while Krause argues that "changes" can reasonably be read as referring to her firing, it could also refer to internal structural changes within those departments, the hiring of leadership in either the operations or quality departments (indeed, Krause's departure two months earlier required the promotion of a new CQO), or even the addition of leadership positions within either of those departments. The statement does not, necessarily, even refer only to the head of the department; it could be read as referring to any of the employees within either the operations team or quality leadership team, including the specific leadership of the Boston facility. Indeed, Krause was the head of quality for "over a dozen" of Integra's manufacturing facilities. ECF No. 8 ¶ 11. Certainly, it is possible that Krause was part of the group of individuals referenced in that statement, but without "further inquiry," a reasonable listener would not know or understand De Witte to be identifying Krause

12

specifically. That dooms Krause's defamation claim. *See Daddy Rocks*, 171 F. Supp. 2d at 948.

*Tholen v. Assist America, Inc.*, 970 F.3d 979 (8th Cir. 2020), is instructive. There, an American doctor was severely injured in a unique accident in Mexico that resulted in the amputation of his leg. *Id.* at 981. To return to the United States, Dr. Tholen used Assist America, a "global emergency medical services" organization. *Id.* About a year after the accident, Assist America published a case study that did not name Dr. Tholen but referred to its subject as a "59-year-old male, injured in a zip lining accident in Cancun, Mexico," a "doctor himself," who had his leg amputated. *Id.* at 981–82. Dr. Tholen and his wife sued Assist America for defamation, alleging that several statements in the case study were false and defamatory. *Id.* at 982. The district court dismissed the defamation claim, holding that the "case study did not identify or refer to the Tholens, and therefore their identity was not readily ascertainable." *Id.*

In reversing, the Eighth Circuit framed the question as whether "the allegations pled in the Tholens'[] complaint were sufficient to establish a plausible claim that those reading the case study would know it was referring to the Tholens." *Id.* at 983. Answering the question in the affirmative, the court noted that the case study's reference to "a male member [of Assist America], a doctor himself who was injured in a zip lining accident in Mexico whose leg was ultimately amputated" meant that the "universe of identifiable subjects who fit all of these unique facts is practically limited to one." *Id.* at 984 (alteration in original) (internal quotation marks omitted). The Eighth Circuit also found important that among the possible readers of the case study were "employees at Assist America who

13

were familiar with the Tholens' story, or individuals in Minnesota or the medical community generally who were aware of Dr. Tholen's amputation." *Id.* at 983 n.1. Explaining that a reasonable reader could put two and two together and that the case study was about Dr. Tholen, the Eighth Circuit held the complaint pleaded "*just enough* to proceed beyond the motion to dismiss stage." *Id.* at 983 (emphasis added).

The May 2024 Statement contains none of the same specificity such that the "universe of identifiable subjects . . . is practically limited to one." *Id.* at 984. It does not, of course, refer to one individual, but instead to the operations and quality leadership teams as a whole. The May 2024 Statement does not identify what "changes" took place and, in fact, does not even identify when the changes took place. The May 2024 Statement, therefore, is not limited to a reference to Krause only—let alone her termination. This is true even with the Court recognizing that Krause was synonymous with quality leadership given her position as the CQO.

The May 2024 Statement also fails to meet the remaining defamation factors. For instance, De Witte's statement that the "right focus and capabilities [are] applied to Boston" is not a "published statement of fact," but instead an opinion made by De Witte in response to a specific question an investor asked of him. "The First Amendment protects opinion from defamation liability." *Larson v. Gannett Co., Inc.*, 940 N.W.2d 120, 147 (Minn. 2020). A nonactionable opinion is a statement that "cannot be reasonably interpreted as stating a fact" and "cannot be proven true or false." *McKee v. Laurion*, 825 N.W.2d 725, 733 (Minn. 2013). Courts consider factors such as (1) the specificity and precision of the statement, (2) its verifiability, (3) the literary and social context in which the statement was made, and

14

(4) the public context in which the statement was made. *López Prater*, 693 F. Supp. 3d at 1028. De Witte's statement that Integra made changes "to ensure the right focus and capabilities" were applied at the Boston facility lacks any degree of specificity and simply reflects De Witte's own opinion about the direction of the company's operations and quality leadership teams. Even if the Court accepts, as Krause urges, that De Witte's implication was that Krause was not appropriately focused or did not have the capability to fix the Boston facility's troubles, the Court cannot conceive of how she could prove the statement false. It is, of course, her belief that she had the right focus and capability, and she may well be right, but that is ultimately a matter of opinion. That De Witte had and expressed his own contrary opinion, even if it could be understood as a slight towards Krause specifically, does not expose him to defamation liability.

Nor does the Court believe that De Witte's statement that Integra "made changes to the operations and quality leadership and structure" was false in the first place. That statement is undeniably true. Krause argues that because she made the decision to resign, Integra's implication that *it* made changes to the leadership team was false. ECF No. 60 at 19. Krause slices the onion much too thin: one way or another, Integra made changes to its quality team, even if only because the changes were necessitated by Krause's resignation.

Because the May 2024 Statement cannot reasonably be read as "of and concerning" *only* Krause, and because portions of it are either vague statements of opinion or indisputably true, the Court holds the May 2024 Statement cannot form the basis for a claim of defamation.

15

### B. The June 2023 Statement

The other allegedly defamatory statement—Schwartz's June 2023 Statement to Krause exclaiming "What the fuck have you been doing? You've been in Boston every week for the past couple months and all issues should have been fixed by now," ECF No. 8 ¶ 44—is likewise not actionable because it is a statement of opinion.[4]

The June 2023 Statement does not contain the sort of specificity, precision, or verifiability necessary to form the basis of a defamation claim. *López Prater*, 693 F. Supp. 3d at 1028. First, by using the words "should have," Schwartz implies that it is his belief that Krause could have solved the issues by that date, not that she failed by some objective and falsifiable measure. Notably, he does not point to Integra's previously established goals for her, or some agreement between Integra and Krause that she supposedly failed to satisfy, by which the Court could objectively determine the statement's falsity. *See Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 308 (Minn. Ct. App. 2001) (citation omitted) ("[I]f it is plain that the speaker is expressing a 'subjective view, an interpretation, a theory, conjecture, or surmise,' rather than claiming to be in possession of 'objectively verifiable facts,' the statement is not actionable."). Nor does Schwartz provide a specific error he believes Krause committed or point to any specific actions she failed to

---

[4] Krause does not assert that the portion of the statement that she had "been in Boston every week for the past couple months" is false or actionable. Rather, she focuses on the latter portion of Schwartz's statement: that "all issues" in the Boston facility "should have been fixed by now."

take. As with the May 2024 Statement, the Court does not believe that Krause could ever go about proving the June 2023 Statement false, where its precise contours are undefined.

Schwartz, undoubtedly, expresses his dissatisfaction that Krause had not yet solved the Boston facility's issues. And Krause may vehemently disagree that it was reasonable to have expected her to fix "all issues" by the time the statement was made. Indeed, she asserts that Schwartz actively hindered her ability to remedy the Boston facility's issues and that it was therefore unreasonable for him to assert that she should have solved those issues. ECF No. 60 at 24. But even if it is true that Schwartz impeded Krause's ability to solve the issues, it remains a statement of opinion that she *should have* solved them. What remains is an opinion expressing "'mere vituperation and abuse' or 'rhetorical hyperbole,'" but "that cannot be the basis for a defamation action." *McKee*, 825 N.W.2d at 733 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 17, 20 (1990)). Accordingly, because neither of the statements that Krause identifies constitute defamation as a matter of law, the Court dismisses Krause's defamation claim.[5]

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Integra's Partial Motion to Dismiss (ECF No. 43) is **GRANTED**; and

---

[5] Integra alternatively argued that the June 2023 Statement, even if defamatory, is not actionable because it is protected by "qualified privilege." ECF No. 44 at 19. The Court need not reach the issue here where Krause has not adequately pleaded the statement was defamatory in the first place.

17

2. Count Five (Intentional Infliction of Emotional Distress) and Count Six (Defamation) of Krause's complaint are **DISMISSED WITHOUT PREJUDICE**.

Dated: September 16, 2025
                                             *s/Laura M. Provinzino*
                                             Laura M. Provinzino
                                             United States District Judge